# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:07CV374-C

| | |
|---|---|
| THOMAS A. MORGAN, JAMES R. MORGAN, and JAMES W. MORGAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>PATRICK K. MOUG, LON STRATTON, BUOY 22 FILMS B.A.A.L., LLC, IAM BONNER, and JASON WAUGH,<br><br>    Defendants and<br>    Third-Party Plaintiffs,<br><br>vs.<br><br>NBC UNIVERSAL, INC., MSNBC CABLE LLC, and MSNBC INTERACTIVE NEWS, LLC,<br><br>    Third-Party Defendants. | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on the Third-Party Defendants' "Motion to Dismiss Third-Party Complaints" (document #42) and "Memorandum ... in Support ..." (document #43), both filed February 4, 2008; and the Defendants/Third-Party Plaintiffs' "Memorandum ... in Opposition ..." (document #51) filed February 25, 2008.

On March 17, 2008, the Third-Party Defendants filed their "Reply ..." (document #54).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and this motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Third-Party Defendants' "Motion to Dismiss Third-Party Complaints" be granted, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action to recover damages for defamation and other related state law claims allegedly arising out of the events following the death of Jennifer Morgan, the sister of Plaintiffs Thomas A. Morgan, presently a citizen of Mecklenburg County, North Carolina, and James W. Morgan, and the daughter of Plaintiff James R. Morgan. Ms. Morgan was killed in her home in South Carolina on November 9, 1994. The South Carolina Law Enforcement Division ("SLED") investigated Ms. Morgan's death and concluded that it was a homicide. However, through the present date, no one has ever been charged with Ms. Morgan's murder.

Accepting the allegations of the Complaint as true, the Morgan family, and particularly Plaintiff Thomas Morgan, became frustrated with the course of the SLED investigation, and SLED's failure to charge a suspect. As a way to find closure regarding his sister's death, Thomas Morgan wrote a fictional screenplay in 1996 regarding Jennifer's murder.

In 2002, one of Thomas Morgan's friends told him that Defendant Patrick Moug might be able to help Mr. Morgan make a film from the screenplay. At that time, Defendant Moug was a police officer with the City of Livonia Police Department in Michigan and an amateur actor and filmmaker.

After Defendant Moug and Plaintiff Thomas Morgan met, Mr. Moug expressed interest in Mr. Morgan's screenplay and suggested that they make a promotional video to raise money for the

film. In 2002 and 2003, Mr. Moug made several trips to South Carolina to interview both Thomas Morgan and Jennifer Morgan's friends, ostensibly to obtain material for the promotional video that supposedly would lead to the production of Mr. Morgan's screenplay.

In 2003, John Schwert, a Charlotte, North Carolina filmmaker, learned about Thomas Morgan's screenplay and contacted Mr. Morgan about funding the film, with the condition that Mr. Schwert would direct the project instead of Defendant Moug. Mr. Morgan agreed and a movie based on his screenplay, titled *Among Brothers*, was released in 2005, without Mr. Moug's involvement. Upon learning that he would not be directing Mr. Morgan's film, Defendant Moug allegedly replied that Mr. Morgan would "be sorry" for that decision.

On his website, boldasalion.net, Defendant Moug states that following his first meeting with Thomas Morgan, he had no intention of directing or producing Mr. Morgan's screenplay and was instead proceeding, surreptitiously, as a police officer investigating Jennifer Morgan's murder and obtaining information for his own film. The Plaintiffs allege upon information and belief that Mr. Moug contacted both SLED and the Federal Bureau of Investigation with his "findings," that is, a tape recording of his interviews with Thomas Morgan, but was told that the recording revealed nothing suspicious.

Sometime in June 2005, Defendant Moug again met with Mr. Morgan, on this occasion in a room in a Charlotte, North Carolina hotel. The Plaintiffs allege that Defendant Moug secretly recorded the meeting, on both audiotape and videotape. Although Defendant Moug allegedly "tried to coerce [Thomas Morgan] into confessing a crime ... through verbal and physical means," Mr. Morgan "specifically denied ... and informed [Defendant] Moug that his accusations [that Mr. Morgan had killed his sister] were not true."

3

In 2006, and through the corporate Defendant, BUOY 22 Films B.A.A.L., LLC, a Michigan limited liability company he organized and owned, Defendant Moug released a second movie about Jennifer Morgan's murder, titled *Bold as a Lion*, which Defendant Moug directed and which accuses Plaintiff Thomas Morgan of killing his sister. Defendants Lon Stratton, Ian H. Bonner, and Jason Waugh, all Michigan residents, were, respectively, the Producer and Director of Photography, the writer and editor of the script, and the Associate Producer of *Bold as a Lion*. The Plaintiffs allege that the movie also misquotes Mr. Morgan's statements and inaccurately states that law enforcement officials in South Carolina have concluded that Mr. Morgan is the "prime suspect" in the case.

In addition to the television broadcast on Third-Party Defendant NBC Universal, Inc.'s *Dateline* program, discussed below, the Plaintiffs contend that the Defendants' defamatory statements contained in *Bold as a Lion* have been published on the following occasions:

1. At a screening of the movie at the University of Dayton School of Law on March 15, 2007;

2. At a press conference that Defendant Moug conducted in Livonia, Michigan sometime in Spring 2007;

3. At a screening of the movie at the Canton Emagine Theater in Michigan on May 17, 2007;

4. At a screening of the movie at the Schoolcraft College School of Criminal Justice in Michigan (no date stated in the record); and

5. Through September 6, 2007, the date of the filing of the Complaint, on the boldasalion.net website as well as on internet outlets youtube.com, facebook.com, and myspace.com.

Relevant to the subject Motion to Dismiss, on May 11, 2007, Third-Party Defendant NBC

Universal, Inc.'s broadcast a report on its *Dateline* program concerning Ms. Morgan's murder. In the nineteen-page Complaint, a single paragraph is devoted to this broadcast, as follows:

> On or about May 11, 2007, the NBC news show DATELINE broadcasted clips from *Bold as a Lion* and interviewed [Defendant] Moug regarding his involvement with the movie. In his interviews, [Defendant] Moug falsely accuses all the Plaintiffs of involvement in the death of Jennifer Morgan. To wit, [Defendant] Moug accuses Plaintiffs of conspiring to commit the murder and covers [sic] up evidence of the same in order to avoid arrest and prosecution for the crime. [Defendant] Moug also insinuated that the Plaintiffs had an incestuous relationship with Jennifer Morgan.

"Complaint" at 9 (document #1).

On September 6, 2007, the Plaintiffs filed their Complaint against Defendants Moug, Stratton, Bonner, Waugh, and Buoy 22 Films B.A.A.L., LLC, alleging claims for defamation, fraud, negligent misrepresentation, unfair and deceptive trade practices, intentional and negligent infliction of emotional distress, and civil conspiracy. Concerning their defamation claim, the Plaintiffs allege that the "Defendants made the defamatory statements with knowledge of their falsity [and] ... with actual malice." Id. at 12. The Plaintiffs further allege that "Defendants' defamatory statements were malicious, intentional, willful, wanton and made with reckless disregard for the rights of Plaintiffs." Id. at 13.

On December 6, 2007, Defendants Moug, Stratton, and Buoy 22 Films B.A.A.L., LLC filed a Third-Party Complaint, stating a single claim for contribution from Third-Party Defendants NBC Universal, Inc., MSNBC Cable LLC, and MSNBC Interactive News, LLC. The Defendants contend that because NBC broadcast Defendant Moug's false accusations as part of its *Dateline* report, which was subsequently re-broadcast on television by MSNBC Cable and available on the Internet through MSNBC Interactive News, the Third-Party Defendants are jointly and severally liable for any damages the Plaintiffs might recover on their defamation, negligent misrepresentation,

negligent infliction of emotional distress, and unfair and deceptive trade practices claims.

On December 21, 2007, Defendants Bonner and Waugh filed an identical Third-Party Complaint against the same Third-Party Defendants.

On February 4, 2008, the Third-Party Defendants filed their Motion to Dismiss the Third-Party Complaints, contending that they have no direct liability to the Plaintiffs, an express requirement under North Carolina's contribution statute, N.C. Gen. Stat. § 1B et. seq., and further, that the same statute prohibits recovery of contribution by a tortfeasor who caused harm through intentional conduct. In support of their Motion, the Third-Party Defendants ask the Court to take judicial notice that the subject broadcast was two hours long and "investigated multiple theories of Jennifer's unsolved murder," that the report included only two statements by Defendant Moug (that Plaintiff Thomas Morgan had an incestuous relationship with his sister and murdered her, and that the Morgan family conspired to conceal those crimes), and that the report also included lengthier interviews not only with Plaintiff Thomas Morgan but also with his parents (Plaintiff James R. Morgan and his wife), all of whom denied those allegations.[1] Moreover, the report concluded with an interview with the lead SLED investigator, who characterized Defendant Moug's accusations as "bunk," and stated that a thorough investigation had cleared the Morgans of any involvement in Jennifer Morgan's murder or any other wrongdoing, and that the chief suspect was a neighbor who was by then in prison for other crimes. Finally, Keith Morrison, NBC's on-air interviewer, expressed skepticism in response to Defendant Moug, describing *Bold as a Lion* as "a film crammed

---

[1] A copy of the broadcast, in DVD format, was attached as Exhibit A to the "Declaration of Julie Rikelman." (document #44). Moreover, the Defendants repeatedly reference and rely upon the broadcast in the Third-Party Complaints against NBC. See, e.g., Third-Party Complaints at ¶¶ 13-19, 21-25 (documents ## 20 and 26). Documents referenced in a complaint and central to the plaintiff's claims may be considered by the Court on a motion to dismiss. See, e.g., Synergy Fin., L.L.C. v. Zarro, 329 F. Supp. 2d 701, 703-04 (W.D.N.C. 2004).

with insinuation ... [lacking] actual evidence" and characterizing Defendant Moug's theory about the Morgans' involvement in Jennifer Morgan's murder as "out there, way out there" and the product of "taking 2 and 2 and coming up with 5."

In their brief in response, the Defendants concede that rather than arising from a factual or legal basis separate from their defamation claim, the Plaintiffs' negligent misrepresentation, negligent infliction of emotional distress, and unfair and deceptive trade practices claims are "recitals of" and "based solely on" the defamation claim. "Memorandum ... in Opposition ..." at 23 (document #51). In other words, the Defendants base their contribution claim as to the Plaintiffs' negligent misrepresentation, negligent infliction of emotional distress, and unfair and deceptive trade practices claims – and oppose the Third-Party Defendants' Motion to Dismiss – entirely on the premise that they first must and will recover contribution on the defamation claim. Id. at 24 ("Therefore, if the Dateline broadcast is defamatory, then NBC would be jointly liable with regard to any causes of action related to the alleged defamation.")

The Third-Party Defendants' Motion to Dismiss has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and

Procedure §1356 (1990).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In the United States Supreme Court's most recent examination of this standard, it explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . . And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. Requirement of Direct Liability

North Carolina has adopted the "Uniform Contribution Among Tort-Feasors Act," which provides for a right of contribution "where two or more persons become jointly or severally liable in tort for the same injury to person or property." N.C. Gen. Stat. § 1B-1(a). As the parties agree, a defendant tortfeasor who is found to be liable to an injured plaintiff may recover contribution from another alleged tortfeasor only if the second tortfeasor could have been held directly liable by the

8

plaintiff. See State Farm Mut. Auto. Ins. Co. v. Holland, 324 N.C. 466, 470, 380 S.E.2d 100, 103 (1989) (rejecting contribution claim); Hobbs v. Goodman, 240 N.C. 192, 195, 81 S.E.2d 413, 415 (1954) (dismissing contribution complaint for failure to state a claim); and Bowman v. Alan Vester, 151 N.C. App. 603, 608, 566 S.E.2d 818, 822 (2002) (dismissing contribution claim on 12(b)(6) motion). Moreover, the party seeking contribution has the burden to show direct liability. Holland, 324 N.C. at 470, 380 S.E.2d at 103. Accordingly, and assuming arguendo that they are found liable to the Plaintiffs on their defamation and related claims, the Defendants may recover contribution from the Third-Party Defendants only if the Third-Party Defendants could have been found directly liable on those claims as well.

In North Carolina, "[i]n order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Craven v. Cope, ___ N. C. App. ___, ___, 656 S.E.2d 729, 732 (February 19, 2008), quoting Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002), disc. rev. denied, 357 N.C. 163, 580 S.E.2d 361, cert. denied, 540 U.S. 965 (2003).

"[T]he term defamation applies to the two distinct torts of libel and slander." Boyce & Isley, PLLC, 153 N.C. App. at 29, 568 S.E.2d at 898. "In general, libel is written while slander is oral." Tallent v. Blake, 57 N.C.App. 249, 251, 291 S.E.2d 336, 338 (1982). Although the Plaintiffs have alleged facts that, if proven, would support claims against the Defendants for both slander and libel, the Third-Party Defendants' involvement is limited to the *Dateline* report, which if otherwise defamatory would amount to libel. Boyce & Isley, PLLC, 153 N.C. App. at 29, 568 S.E.2d at 898 (reports in modern media, including television, evaluated as libel).

9

> In Craven, supra, the North Carolina Court of Appeals most recently explained:
>
> North Carolina law recognizes three classes of libel: (1) publications obviously defamatory which are called libel per se; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed libels per quod.

___ N. C. App. at ___, 656 S.E.2d at 732 (defendant's political mailing alleging that if elected to city council, plaintiff would "raise taxes to pay for new development" did not amount to libel per se), quoting Daniels v. Metro Magazine Holding Co., L.L.C., 179 N.C. App. 533, 538, 634 S.E.2d 586, 590 (2006), disc. rev. denied, 361 N.C. 692, 654 S.E.2d 251 (2007).

As the parties agree, a televised report falsely accusing a person of committing incest with his sister and then murdering her – if, in fact, the *Dateline* report taken as a whole amounted to such a publication – would qualify as libel per se. Boyce & Isley, PLLC, 153 N.C. App. at 29, 568 S.E.2d at 898 (libel per se is "a publication which, when considered alone without explanatory circumstances: charges [among other things] that a person has committed an infamous crime"), quoting Phillips v. Winston-Salem/Forsyth County Bd. of Educ., 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), disc. review denied, 340 N.C. 115, 456 S.E.2d 318 (1995). See also Renwick v. News and Observer Publ'g Co., 63 N.C. App. 200, 210, 304 S.E. 2d 593, 600, rev'd on other grounds, 310 N.C. 312, 312 S.E.2d 405 (1984) ("The writing should be interpreted from its four corners and the intent and meaning of an alleged defamatory statement must be gathered not only from words singled out as libelous, but from the context in which they appear.").

Rather than contend, however, that the *Dateline* report was libelous generally or had any potentially libelous component other than Defendant Moug's statements, and no doubt influenced by the clear tenor of the report being favorable to the Plaintiffs, the Defendants seek to avoid

dismissal of their contribution claim with the contention that simply by including Defendant Moug's accusations in the report, the Third-Party Defendants adopted those accusations as their own.

It is well settled that where two individuals or entities jointly publish a defamatory statement, for example, a newspaper that publishes a defamatory article written by one of its reporters, or where a second publisher re-publishes a defamatory statement, for instance, a newspaper re-publishing a defamatory article first printed in another newspaper, the publishers will share joint liability and that contribution, if otherwise available, may be had between them. See, e.g., Milkovich v. Lorain Journal Co., 497 U.S. 1, 5 (1990) (newspaper and its reporter); Lee v. Dong-A Ilbo, 849 F.2d 876, 877 (4th Cir. 1988) (American newspaper "simply repeated the [defamatory] story as reported in the Korean press"); and Metro Magazine Holding Co., L.L.C., 179 N.C. App. at 538, 634 S.E.2d at 590 (magazine and author of article).

However, the Defendants have not cited, and the undersigned is unaware of, any authority considering whether, much less holding that, a media outlet that includes defamatory accusations in a news report for the specific purpose of debunking them is jointly liable with the defamer. Indeed, as the Third-Party Defendants state in their brief, such a contention "stretch[es] the principle of republication beyond recognition [and] ... ignore[s] the well-established principle of North Carolina law that statements must be read in their full context when the Court considers whether they are defamatory." "Third-Party Defendants' Reply Brief ..." at 5-6 (document #54), citing Renwick, 63 N.C. App. at 210, 304 S.E. 2d at 600 ("The writing should be interpreted from its four corners and the intent and meaning of an alleged defamatory statement must be gathered not only from words singled out as libelous, but from the context in which they appear.").

In short, where the Third-Party Defendants included two short statements from the alleged

defamer in a two-hour television report that was favorable to the Plaintiffs generally, and specifically that characterized those accusations as "bunk," "way out there," and "insinuation ... [without] actual evidence," the Defendants have failed to meet their burden to show that the Third-Party Defendants could be held liable directly to the Plaintiffs on their defamation or related claims. Accordingly, the undersigned will respectfully recommend that the Third-Party Defendants' Motion to Dismiss be granted.

### C. Intentional Behavior

Assuming arguendo that the Defendants had met their burden of showing that the Third-Party Defendants were jointly liable for any damages suffered by the Plaintiffs, the Defendants would still be precluded from recovering any contribution for liability arising from their intentional conduct. As discussed above, North Carolina has adopted the Uniform Contribution Among Tort-Feasors Act, which explicitly states that "[t]here is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury .... " N.C. Gen. Stat. § 1B-1(c). Accord Holland v. Edgerton, 85 N.C. App. 567, 572-74, 355 S.E.2d 514, 518-19 (1987) (dismissing contribution claim for intentional infliction of emotional distress because liability requires intentional or reckless conduct).

Although North Carolina appellate courts have not had occasion to apply this clear statutory proscription to a defamation claim, courts in other states have held that where intentional defamation, or defamation accompanied by actual malice, is alleged, contribution is barred. See, e.g., Neurosurgery & Spine Surgery v. Goldman, 790 N.E.2d 925, 934 (Ill. App. Ct. 2003) (interpreting Illinois's contribution statute and stating that where plaintiff pleads that defendant

defamed with actual malice, defendant cannot bring contribution claim); and Bedard v. Greene, 409 A.2d 676, 677 (Me. 1979) (same for Maine statute).

The Defendants' argument that intent is not a required element of the tort of defamation misses the point, as it is the conduct alleged, rather than the claim, that is determinative. Where as here, the Plaintiffs clearly allege that the Defendants defamatory conduct was intentional, knowing, and accompanied by actual malice, contribution for their liability, if any, is barred by statute. Accord N.C. Gen. Stat. § 1B-1(c); and Holland, 85 N.C. App. at 572-74; 355 S.E.2d at 518-19. For this further reason as well, and recognizing that the Defendants concede that they may recover contribution as to the Plaintiffs' negligence claims only secondarily to obtaining contribution on the principal defamation claim, the undersigned will respectfully recommend that the Third-Party Defendants' Motion to Dismiss be granted.

### III. ORDER

**IT IS ORDERED** that all further proceedings concerning the contribution claims stated in the Third-Party Complaints, including all discovery, are **STAYED** pending the District Court's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Third-Party Defendants' "Motion to Dismiss Third-Party Complaints" (document #42) be **GRANTED** and that the Third-Party Complaints (documents ##20 and 26) be **DISMISSED WITH PREJUDICE**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)©, written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: April 10, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge